holders of the title may have different and separate interests in the enforcement of the covenant. Of the covenants of warranty and quiet enjoyment there is no breach until eviction, and hence no cause of action can arise until that time. There is therefore no conflict of interest between successive holders of the title. An earlier grantee of the land, who has parted with his title, cannot recover against his covenantor until himself compelled to respond on his own covenants to his grantee. Withy v. Mumford, 5 Cow. 137; Rawle, Cov. § 215. If no cause of action arose in case of a violation of a covenant against incumbrances by the existence of a mortgage, tax, or other pecuniary charge until payment, or even if, until such payment, the covenantee could recover in all cases only nominal damages, it would not create any serious difficulty to consider the covenant as running with the land; but if the covenantee may recover as damages the loss or injury he may sustain on a sale of the premises, without an actual discharge of the incumbrance, as intimated in McGuckin v. Milbank, 152 N. Y. 297, 46 N. E. 490, Funk v. Voneida, 11 Serg. & R. 109, and Haire v. Baker, 5 N. Y. 361, it is impossible that the covenant should inure to the benefit of a grantee on such sale. Still, however that question may be finally decided, I think the principle can well be supported that wherever a covenantee under a covenant against incumbrances has, on an alienation of property by him, either rendered himself liable to his grantee by a covenant against incumbrances, or, by his conveyance, estopped himself from asserting title to the incumbrance as against his grantee in case he should afterwards acquire it, then his deed should be held to operate as an assignment of his claim against his grantor.

This view of the case at bar leads to an affirmance of the judgment. The covenant for further assurance, which was clearly prospective, and ran with the land, operated to carry with it, for the benefit of subsequent grantees, the covenant against incumbrances. Such was the doctrine enforced in Colby v. Osgood, 29 Barb. 339, and Ernst v. Parsons, 54 How. Prac. 163. It is true, the complaint says nothing about the covenant; but it was proved without objection, and it may be considered, if necessary, to support the judgment. There was also a covenant for quiet enjoyment in the deed, and there is a suggestion in Andrews v. Appel, supra, that, when this is coupled with a covenant against incumbrances, both may be construed as running with the land, or, in our view, at least, as operating as an assignment of the latter covenant.

The judgment should be affirmed. All concur.

---

(21 App. Div. 172.)

### In re ROWLAND.

(Supreme Court, Appellate Division, Second Department. October 12, 1897.)

SUPPLEMENTARY PROCEEDINGS—VENUE.

Under Code Civ. Proc. § 2458, providing that to sustain, in certain cases, the issue of an order in supplementary proceedings, an execution must have been issued to the sheriff of the county where the judgment debtor "resides," where an execution is issued in the county in which the judgment

debtor resides in the summer, an order for an examination in supplementary proceedings in such county is valid, though defendant's permanent residence is elsewhere.

Appeal from Rockland county court.

John T. Rowland, a judgment debtor, appeals from an order of the county judge denying his motion to set aside an order for his examination in supplementary proceedings. Affirmed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and BRADLEY, JJ.

Chas. D. Ridgway, for appellant.
William J. Griffin, for respondent.

GOODRICH, P. J. On April 16, 1897, Phebe Hobby obtained a judgment against John T. Rowland in the supreme court in the county of Queens, and the same was docketed in Rockland county. Execution was issued to the sheriff of that county, and, on its return unsatisfied, an order was obtained from the county judge for the examination of Rowland in supplementary proceedings. On the return day Rowland appeared, and moved to vacate the order, on the ground that the county judge had no power to make the order, as Rowland did not reside in Rockland county. Section 2458 of the Code of Civil Procedure provides that, to sustain the issue of the order, an execution must have been issued to the sheriff of the county where the judgment debtor resided at the time of the issuance of the order. The question, therefore, is whether Rowland resided in the county of Rockland when the order for his examination was made, on August 12, 1897. He testified in April, on the trial of the action, as follows: "Q. Where do you live? A. I live in Jersey City part of the time, and part of the time in Rockland county." It appears by the affidavit used in opposition to the motion that on August 23d Mr. Ridgway, his attorney, informed the plaintiff's attorney that Rowland had resided at Hempstead, Rockland county, since May 1, 1897, and was still residing there; that he was at New Hempstead, and had been there every summer for 28 years. It is the evident intention of the Code that a judgment debtor should not be compelled to attend for examination at a place distant from his ordinary place of abode, and the limitations of the section are primarily intended for the protection and convenience of the debtor. In this view, no hardship would be imposed by his compulsory attendance at a place in Rockland county contiguous to what he admitted was his place of abode during the summer. The question of permanent residence does not obtrude itself into this view of the purpose of the statute. The use of the word "resident" in many other statutes—such, for instance, as those relating to the residence of a party necessary to give jurisdiction in actions of divorce—does not apply to the present proceedings.

We are of opinion that the order was proper, and it is affirmed. All concur.